UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARK H. WILLIAMS,

    Plaintiff,

    v.

THE INTERPUBLIC SEVERANCE PAY
PLAN, et al.,

    Defendants.

No. 06 C 703
Judge James B. Zagel

**MEMORANDUM OPINION AND ORDER**

**I.    BACKGROUND**

This case arises from Defendant Interpublic Severance Pay Plan's ("Defendant" or the "Plan") decision to deny Plaintiff Mark H. Williams ("Mr. Williams" or "Plaintiff") application for severance.

Campbell Mithun is an advertising, marketing and promotions agency which had offices in California, New York, Minneapolis and Chicago. On March 31, 2005, it sold its Chicago office ("Sale") to GreenHouse Communications, Inc. ("GreenHouse"). At the time of the Sale, Mr. Williams' title was Senior Vice President, Account Management and Development in Campbell Mithun's Chicago Office.[1] His salary was $167,000 per year.

The purchase agreement executed in connection with the Sale provided, among other things, that GreenHouse would offer comparable positions to each Chicago Campbell Mithun employee at the same or higher salary. Mr. Williams was offered the position of Senior Vice

---

[1] Mr. Williams disputes that this was his title. As I discuss more fully below, *see infra* Part IV-A, I find that this was his title at the time of the Sale.

1

President, Account Management, with a salary of $169,000. Mr. Williams declined this offer and ceased working for the company after March 31, 2005.

Campbell Mithun ultimately is owned by The Interpublic Group of Companies, and Campbell Mithun employees thus were eligible to participate in the Interpublic Severance Pay Plan ("Plan"). The Plan specifically provides that an employee shall not be entitled to severance benefits if his employment is terminated as the result of a sale of the business and the employee is offered a "comparable position at a successor employer at the same or a higher salary."

Section 4.4 of the Plan reads as follows:

> <u>Merger or Sale</u>. Notwithstanding anything herein to the contrary, an Employee shall not be eligible to receive a severance benefit pursuant to the Plan if (a) his employment with an Employer is terminated as the result of a Sale of assets, merger, liquidation, re-organization, or disposition and (b) . . . (ii) the Employee is offered a comparable position at a successor employer at the same or a higher salary as of the closing date. After the occurrence of an event described in the preceding sentence (a "triggering event"), neither the Employer nor the successor employer shall be required to pay any benefit pursuant to the Plan with respect to Service completed before the triggering event to any Employee described in this Section 4.4.

Mr. Williams was told, on or about March 31, 2005, that he would not be eligible for severance because GreenHouse had offered him a comparable position. By letter dated May 9, 2005, Mr. Williams, through legal counsel, formally requested severance benefits. This letter, however, did not explain why Mr. Williams was entitled to benefits. Also on May 9, Mr. Williams, again through counsel, sent a separate letter to the Plan Administrator, the Management Human Resources Committee ("MHRC"), requesting information regarding Mr. Williams' possible benefits under the Plan and a copy of the Plan.

2

On May 31, 2005, the claim was denied. On June 13, 2005, Mr. Williams' attorney wrote a letter, again requesting either a complete copy of the Plan or an explanation as to why he was not entitled to receive a copy. Mr. Williams thereafter switched to different legal counsel, who sent a letter on October 14, 2005 requesting documents, setting forth arguments as to why Plaintiff claimed an entitlement to severance benefits, requesting reconsideration of the denial, and stating that if the denial is not reconsidered, Mr. Williams would submit a more detailed appeal after receiving the requested documents. On November 7, 2005, Mr. Williams sent a letter to the MHRC demanding a response to the requests laid out in the October 14 letter. On December 5, 2005, Mr. Williams contacted the General Counsel of the Interpublic Group regarding his prior request for documents and for consideration of his appeal.

Mr. Williams filed this suit on February 6, 2006. On the following day, February 7, 2006, counsel to the Plan Administrator wrote to Plaintiff's counsel, denying the claim for severance, and providing an explanation of the reasons. The February 7 letter enclosed a copy of the Plan and explained that the Plan Administrator believed that it had sent this document to Williams' prior counsel. In a follow-up letter dated April 10, 2006, counsel to the Plan Administrator sought to ensure that Mr. Williams received the information he had requested, described what materials he could submit to perfect his claim, and invited Mr. Williams to file an appeal. Mr. Williams filed such an appeal on June 9, 2006.

The MHRC met and considered Mr. Williams' appeal. The MHRC reviewed pertinent documents—including the letter stating the initial reasons for denial, Mr. Williams' appeal and its attachments, and the Plan. On July 11, 2006, the MHRC upheld

3

its initial determination that Mr. Williams was not entitled to severance benefits. Counsel for the Plan Administrator sent Mr. Williams a letter on August 9, 2006, notifying Mr. Williams that his appeal was denied and explaining the reasons.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In determining whether any genuine issue of material fact exists, all facts must be construed in the light most favorable to the non-moving party and all reasonable and justifiable inferences drawn in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A material fact is genuinely in dispute when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

## III. STANDARD OF REVIEW

The initial question that must be assessed in cases of this sort is the appropriate standard of review.

### A. *Language of the Plan*

Under the Employee Retirement Income Security Act of 1974 ("ERISA"), judicial review of a plan administrator's benefits determination is *de novo* unless the plan grants discretionary authority to the administrator. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). In the event the plan gives the administrator discretionary authority, the court reviews the decision under the arbitrary and capricious standard. *Hackett v. Xerox Corp.*, 315 F.3d 771, 773 (7th Cir. 2003). In order to determine whether the administrator has discretionary

authority, I look to the language of the plan. *Postma v. Paul Revere Life Ins. Co.*, 223 F.3d 533, 538 (7th Cir. 2000).

The Seventh Circuit has suggested that employers seeking to reserve discretionary authority for the administrator of their benefits plan include a safe harbor clause stating that "benefits under this plan will be paid only if the plan administrator decides in his discretion that the applicant is entitled to them." *Herzberger v. Standard Insurance Co.*, 205 F.3d 327, 331 (7th Cir. 2000). In addition, the court has stated that in determining which standard of review is appropriate, "the critical question is whether the plan gives the employee adequate notice that the plan administrator is to make a judgment within the confines of pre-set standards, or if it has the latitude to shape the application, interpretation, and content of the rules in each case." *Diaz v. Prudential Ins. Co. of Am.*, 424 F.3d 635, 640 (7th Cir. 2005).

In this case, I find that the arbitrary and capricious standard applies. First, the Plan's plain language meets the standard established in *Firestone Tire* and its progeny for rebutting the presumption of *de novo* review. The Plan states that the Plan administrator has the right "to interpret the Plan, make findings of fact, and to decide any and all matters arising hereunder, including the right to remedy possible ambiguities, inconsistencies or omissions . . . ." I find this language is sufficient to invoke the arbitrary and capricious standard.

Under the arbitrary and capricious standard, a plan administrator's decision should not be overturned as long as (1) "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome," (2) the decision "is based on a reasonable explanation of relevant plan documents," or (3) the administrator "has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem." *Hess v. Hartford*, 274 F.3d 456, 461 (7th Cir. 2001) (*quoting Exbom v. Central States, Se. and Sw. Areas Health & Welfare*

5

*Fund*, 900 F.2d 1138, 1142-43 (7th Cir. 1990)). For a decision to be deemed reasonable, a plan administrator must be found to have considered the factors that are relevant to the important aspects of the decision, and articulated an explanation that makes a rational connection between the issue, the evidence, the text and the decision made. *Cuddington v. N. Ind. Pub. Serv. Co.*, 33 F.3d 813, 817 (7th Cir. 1994)).

Plaintiff makes two main arguments in support of modifying or abandoning the arbitrary and capricious standard. First, he argues that I should not defer to the Plan because of a conflict of interest. Second, he argues that the procedural irregularities involved here strip the Plan of its discretion.

### B. *Conflict of Interest*

Mr. Williams argues—relying upon *Firestone Tire*—that the Plan had a conflict of interest that should reduce the degree of deference afforded to it. He points to two conflicts: (1) he cites the fact that the Plan was unfunded (i.e., benefits are paid out of the company's general operating funds); and (2) he argues that Interpublic was engaged in a deliberate effort to shed its severance payment liability.

With regard to Plaintiff's argument regarding the Plan being unfunded, the Seventh Circuit has specifically rejected this as a basis for establishing a conflict of interest. *See, e.g., Chalmers v. Quaker Oats Co.*, 61 F.3d 1340, 1344 (7th Cir. 1995) ("The impact on a company's welfare of granting or denying benefits under a plan will not be sufficiently significant as to threaten the administrators' partiality."). In this case, like in *Chalmers*, granting Mr. Williams' severance would have had a *de minimis* impact on Interpublic. Accordingly, I decline—based on the unfunded nature of the Plan—to modify the level of deference the Plan will be afforded.

6

In addition, Mr. Williams offers insufficient evidence in support of his theory that the sale of Campbell Mithun's Chicago facility was motivated by an effort to deny severance. The newspaper article Plaintiff references is inadmissible hearsay and will not be considered. Moreover, the e-mail conversation Plaintiff points to fails to support the inference he asks me to draw.[2] I conclude that the Plan did not have a conflict of interest that requires a modification of the arbitrary and capricious standard.

C.     *Procedural Irregularities*

Mr. Williams also contends that the arbitrary and capricious standard should be abandoned or modified because the Plan failed to adhere to the Plan's procedural requirement when denying Mr. Williams' claim. There is no question that the process employed here was not in compliance with the Plan's provisions. At the very least, the Plan failed to adhere to the timeliness requirements set forth in the Plan. The salient question, however, is whether the Plan gave a full and fair review to Mr. Williams' application for severance benefits. The Seventh Circuit has explained that

> [t]he persistent core requirements of review intended to be full and fair include knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of that evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision.

---

[2]Mr. Williams points to an e-mail from Steve Arndt stating the amount of maximum potential severance liability to Campbell Mithun Chicago employees. However, Mr. Williams acknowledged at his deposition that it was Mr. Williams himself who requested these calculations. Mr. Williams requested these figures because he was one of the bidders competing to purchase Campbell Mithun's Chicago office and therefore wanted to know what his maximum severance liability would be. In light of the fact that these e-mails were sent at Mr. Williams' request, they fail to show that "Interpublic was motivated by an effort to deny severance payments."

7

*Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 689 (7th Cir. 1992) (*quoting Brown v. Ret. Comm. of Briggs & Stratton Ret. Plan*, 797 F.2d 521, 534 (7th Cir. 1986)).

In *Militello v. Central States, Southeast and Southwest Areas Pension Fund*, 360 F.3d 681 (7th Cir. 2004), the Seventh Circuit noted that the fund there failed to follow its own rules when it denied the plaintiff's application for pension benefits. *Militello*, 360 F.3d at 689-90. However, the court nevertheless affirmed the district court's decision granting summary judgment for the plan. *Id.* at 691. The court stated: "we cannot say that failure to follow the appeal process to the letter, without more, necessarily deprived Militello of full and fair review." *Id.* at 690; *see also Buttram v. Central States, S.E. & S.W. Areas Health and Welfare Fund*, 76 F.3d 896, 901 (8th Cir.1996) ("Although the procedural irregularities in this case [which included failure to provide written notice of claim denial, the absence of a second-level appeal, and a seven year gap between application of benefits and a third-level appeal] give us pause, they do not demonstrate that the actual decision reached . . . was arbitrary or whimsical.").

I agree with Plaintiff that the Plan failed to strictly adhere to its own procedures. However, while it did not do so within the prescribed time frame, the Plan did ultimately lay out the reasons for its decisions. Therefore, I do have a record upon which I can rely in order to determine whether the Plan appropriately exercised discretion. Accordingly, I will not totally abandon the arbitrary and capricious standard. As a result of the procedural irregularities, though, I will scale back the degree of deference I accord to the Plan's determination. *See Mers v. Marriott Intern. Group Accidental Death and Dismemberment Plan*, 144 F.3d 1014, 1020 n.1 (7th Cir. 1998) ("The arbitrary and capricious standard does not pose an all-or-nothing choice between full deference or none."); *Van Boxel v. Journal Co. Emp. Pension Trust*, 836 F.2d 1048, 1052-53 (7th Cir. 1987) ("[T]he arbitrary and capricious standard may be a range, not a point.

There may be in effect a sliding scale of judicial review of trustees' decisions. . . .") (internal citation omitted).

## IV. THE PLAN'S DECISION

The Plan specifically provides that an employee shall not be entitled to severance if his employment is terminated as the result of a Sale of the business and the employee is offered a "comparable position at a successor employer at the same or a higher salary."

Section 4.4 of the Plan reads as follows:

> <u>Merger or Sale</u>. Notwithstanding anything herein to the contrary, an Employee shall not be eligible to receive a severance benefit pursuant to the Plan if (a) his employment with an Employer is terminated as the result of a Sale of assets, merger, liquidation, re-organization, or disposition and (b) . . . (ii) the Employee is offered a comparable position at a successor employer at the same or a higher salary as of the closing date. After the occurrence of an event described in the preceding sentence (a "triggering event"), neither the Employer nor the successor employer shall be required to pay any benefit pursuant to the Plan with respect to Service completed before the triggering event to any Employee described in this Section 4.4.

Therefore, the issue here is whether the position offered to Mr. Williams was "comparable" and whether the salary he was offered was the same or higher.

### A. *Mr. Williams Was Offered a Comparable Position*

I find that the position Mr. Williams was offered after the Sale was comparable. In order to assess whether the position he was offered was comparable to the job he had before the Sale, it is obviously necessary to identify both positions. There is no dispute as to the position he was offered: Senior Vice President, Account Management. There is, however, a dispute as to the title Mr. Williams held before the Sale. The Plan asserts that at the time of the Sale, Mr. Williams was Senior Vice President, Account Management and Development. Mr. Williams, on the other

9

hand, contends that his job title was "Senior Vice-President, *Managing Director*, Account Manager and Development." (Emphasis added).

Plaintiff fails to satisfactorily establish that his title included the words "Managing Director." The only support Plaintiff offers for this enhanced title is his own deposition testimony and a copy of his business card. However, evidence submitted in connection with a motion for summary judgment must be competent evidence of a type otherwise admissible at trial. *See Stinnett v. Iron Work Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002). The unauthenticated business card Mr. Williams presents is hearsay, and thus I do not consider it. *See* FED. R. EVID. 802; 901(a). Mr. Williams is left, therefore, relying on his deposition testimony.

By contrast, Plaintiff concedes, in response to Defendant's Local Rule 56.1 Statement of Material Facts, that "Campbell Mithun personnel documents reflect no change in job title or promotion" after the then-Managing Director of the Chicago office Tom Hayden ("Hayden") departed in late-2003 or early-2004. Mr. Williams further concedes that he received no raise after Hayden departed. In addition, Defendant offers the declaration of Don Kvam, the Executive Vice President for Campbell Mithun, in which Mr. Kvam states that "Mr. Williams was never promoted after Mr. Hayden's departure, and never was Managing Director of the Campbell Mithun Chicago office." Mr. Kvan further states that "Williams was not authorized to add 'Managing Director' to his job title or print any documents containing such a title."

I reject Plaintiff's attempt to cast his title as "Senior Vice-President, *Managing Director*, Account Manager and Development." In addition, I do not find that this is a dispute as to a material fact requiring a determination by a jury. The Supreme Court has instructed that Rule 56 "provides that the mere existence of *some* alleged factual dispute between the parties will not

hand, contends that his job title was "Senior Vice-President, *Managing Director*, Account Manager and Development." (Emphasis added).

Plaintiff fails to satisfactorily establish that his title included the words "Managing Director." The only support Plaintiff offers for this enhanced title is his own deposition testimony and a copy of his business card. However, evidence submitted in connection with a motion for summary judgment must be competent evidence of a type otherwise admissible at trial. *See Stinnett v. Iron Work Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002). The unauthenticated business card Mr. Williams presents is hearsay, and thus I do not consider it. *See* FED. R. EVID. 802; 901(a). Mr. Williams is left, therefore, relying on his deposition testimony.

By contrast, Plaintiff concedes, in response to Defendant's Local Rule 56.1 Statement of Material Facts, that "Campbell Mithun personnel documents reflect no change in job title or promotion" after the then-Managing Director of the Chicago office Tom Hayden ("Hayden") departed in late-2003 or early-2004. Mr. Williams further concedes that he received no raise after Hayden departed. In addition, Defendant offers the declaration of Don Kvam, the Executive Vice President for Campbell Mithun, in which Mr. Kvam states that "Mr. Williams was never promoted after Mr. Hayden's departure, and never was Managing Director of the Campbell Mithun Chicago office." Mr. Kvan further states that "Williams was not authorized to add 'Managing Director' to his job title or print any documents containing such a title."

I reject Plaintiff's attempt to cast his title as "Senior Vice-President, *Managing Director*, Account Manager and Development." In addition, I do not find that this is a dispute as to a material fact requiring a determination by a jury. The Supreme Court has instructed that Rule 56 "provides that the mere existence of *some* alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) (holding that evidence must not be based on "flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that knowledge."). I find that no genuine issue of material fact exists on this point and conclude that at the time of the Sale, Mr. Williams' title was "Senior Vice President, Account Management and Development."

Upon concluding that Mr. Williams' title at the time of Sale was Senior Vice President, Account Management and Development, it is clear that the title he was offered—Senior Vice President, Account Management—is comparable. The fact that the titles were comparable is one indication that the jobs were comparable.

The fact that the two jobs were similarly compensated also suggests that the two jobs were comparable. The job Mr. Williams was offered after the Sale carried with it a higher salary than the job he held before the Sale. This suggests that the two jobs were comparable. Mr. Williams points out that the benefits he was offered in connection with the new job were not as good. This, however, does not necessarily mean the jobs were not comparable. First, benefits is only one of many factors to be assessed when analyzing comparability. Moreover, the Plan states only that the post-Sale job has to be comparable, it does not state that the new job has to be superior in all respects. I find that the two jobs' compensation supports the Plan's determination that the two jobs were comparable.[3]

---

[3]It is important to note that the Plan also asks whether the salary in the new job is the same or higher than the old job. I give separate consideration to that factor below. Here, I merely look at compensation as an indicator of comparability.

Mr. Williams also argues that the post-Sale position was not comparable because it was with a smaller, more parochial company. I find that even under the scaled-back arbitrary and capricious standard I am applying here, the Plan was justified in focusing on the position itself, rather than on the nature of the new entity. Section 4.4 of the Plan asks whether "the Employee is offered a comparable position at successor employer." It is clear that the word "comparable" only modifies "position." Nothing in the Plan's language suggests that the inquiry regarding the comparability of the two positions requires an analysis of the old entity versus the new entity. In addition, I find that Mr. Williams fails to identify a sufficient diminution in responsibilities between the old position and the one he was offered to support a finding that the two are not comparable.[4]

In sum, even in light of the diminished deference I am affording to the Plan's determinations, I nevertheless conclude that the Plan was justified in finding that Mr. Williams was offered a comparable position.

### B. Salary Means Salary

The Plan was also justified in determining that Mr. Williams was offered a position "at the same or a higher salary" than the one he occupied before the Sale. Before the Sale, Mr. Williams was earning $167,000 per year. The position he was offered came with a salary of $169,000 per year. Mr. Williams seeks to challenge the notion that his salary was higher by comparing not only base pay, but benefits as well. I find that the Plan was justified in determining that "salary" means base pay alone. Had the language of the Plan inquired as to

---

[4] To be more precise, Mr. Williams points to nothing that would lead me—even under the diminished discretionary standard I am applying—to conclude that the Plan's determination that the two positions had comparable responsibilities was arbitrary or capricious.

whether the employee is offered a position at the same or a higher rate of compensation, Mr. Williams would have had a stronger case. As it is, however, it was neither arbitrary nor capricious for the Plan to construe the term "salary" as meaning base pay. Even if I were reviewing this question *de novo*, I would find this interpretation to be reasonable.

V.     **STATUTORY PENALTIES**

ERISA authorizes penalties of up to $110 per day when a plan administrator fails to comply with certain requests for information within 30 days of receiving such requests. *See* 29 U.S.C. § 1132©; *Lowe v. McGraw-Hill Cos.*, 361 F.3d 335, 338 (7th Cir. 2004). The fines do not follow automatically from failures to comply. Rather, whether or not to impose a penalty—and the amount of any such penalty—are committed to the court's discretion. *See Fenster v. Tepfer & Spitz, Ltd.*, 301 F.3d 851, 858 (7th Cir. 2002); *Ziaee v. Vest*, 916 F.2d 1204, 1210 (7th Cir. 1990). In fact, "an employer's procedural violations of ERISA entitle employees to monetary relief only in exceptional cases." *Thompson v. Safeway, Inc.*, No. 01 C 3260, 2002 WL 500547, at *2 (N.D. Ill. April 2, 2002) (*citing Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 979 (7th Cir. 1999)).

In exercising this discretion, I may consider the plan administrator's "conduct and intent" in refusing to provide the requested documents, as well as any prejudice to the plan participant. *Kleinhans v. Lisle Savings Profit Sharing Trust*, 810 F.2d 618, 622 (7th Cir. 1987); *see also Ames v. Amer. Nat. Can. Co.*, 170 F.3d 751, 759 (7th Cir.1999) (affirming district court's refusal to award a fine where "all relevant sections of the Severance Plan were reproduced verbatim in the employee handbook"); *Ziaee*, 916 F.2d at 1210 ("[T]he judge may, but need not, consider the provable injury when exercising the discretion."); *Thompson*, 2002 WL 500547, at *2 ("The employer must have acted in bad faith, actively concealed the benefit plan, or otherwise

13

prejudiced their employees by inducing their reliance on a faulty plan summary before recovery for procedural violations is warranted.").

While Mr. Williams demonstrates that the Plan failed to send him the documents he requested in a timely fashion, he fails to show how he was prejudiced by this. It is not simply that Plaintiff fails to offer support for the notion that he was prejudiced by not receiving the documents, he fails to even assert that he was prejudiced. It is conceivable, from reviewing the record, that Defendant did not deliberately withhold documents from Plaintiff, but rather, believed that it had previously supplied the necessary materials. Further, it appears that Mr. Williams has the information he needed because he was in possession of the Summary Plan Description. Nevertheless, the Plan had an obligation to send Mr. Williams the documents, and it did not do so despite repeated requests. In fact, the record indicates that the Plan did not send Mr. Williams the documents he was seeking until he filed this lawsuit. Accordingly, I am exercising my discretion and awarding Plaintiff statutory penalties in the amount of $10 per day.

Defendant admits, in response to Mr. Williams' Local Rule 56.1 statement, that Mr. Williams requested certain documents on May 9, 2005. The documents were due thirty days hence, which is June 8, 2005. Therefore, the fine will be assessed from June 9, 2005 until (though not including) February 7, 2006 (the day the Plan sent the documents). That is a total of 243 days. At a rate of $10 per day, that is a total fine of $2,430.

## VI. CONCLUSION

In sum, even under the scaled back arbitrary and capricious standard, I conclude that the Plan justifiably determined that Mr. Williams was "offered a comparable position at a successor employer at the same or a higher rate of salary." Therefore, pursuant to Section 4.4. of the Plan, the Plan reasonably concluded that Mr. Williams was not eligible for severance. Accordingly,

14

Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Summary Judgment is DENIED. In addition, I am imposing a fine of $2,430 pursuant to 29 U.S.C. § 1132(c).

ENTER:

James B. Zagel
United States District Judge

DATE: Aug 7, 2007